**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

ISIDRO CASTILLO               :
#04172-000
                                       :
    Petitioner
                                       :
     v.                                   Civil Action No: AW-06-1991
                                       :
LISA J.W. HOLLINGSWORTH, Warden
       and                              :
UNITED STATES PAROLE COMMISSION
                                       :
    Respondents
                                 o0o

**MEMORANDUM**

      Before the Court is a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus filed by

Isidro Castillo, a D.C. Code prisoner confined at the Federal Correctional Institution in Cumberland,

Maryland, in which he challenges the U.S. Parole Commission's (Commission) decision to deny him

parole and to schedule a reconsideration hearing in three years.  Counsel for Respondents has filed

an answer to which Castillo has filed a reply.  For the reasons that follow, the Court will deny the

petition.

**I.  Claims Presented**

      Castillo asserts the following claims: 1) his due process rights were violated when he did not

receive notice as to when he might be paroled or what actions he might take to improve his chances

for parole; 2) the Commission violated his due process rights by failing to comply with 28 C.F.R.

§ 2.8(n)(1); 3) the Commission failed to follow procedures for factoring an award for institutional

programming into his parole guidelines under 28 C. F. R. § 2.80(k); and 4) he was entitled to an

award for program participation at his initial parole hearing.

**II. Background**

**A. Facts**

On June 21, 1994, the Superior Court of the District of Columbia sentenced Castillo to thirty years imprisonment for voluntary manslaughter and possession of a firearm during a crime of violence.[1]  Resp. Ex. A.   Castillo's  initial parole hearing was held on January 9, 2003. Resp. Ex. B.  Castillo's offense conduct was summarized as follows:

> The subject stated that he was under the influence of alcohol when he pulled the trigger and killed the victim.  The subject stated the argument began when the subject was walking down the street and bumped into the victim.  The subject stated that the victim started using profanity against him and he felt his life was threatened.

*See id.*   The Initial Hearing Summary also noted that Castillo received an Incident Report on January 8, 2000, for possession of intoxicants, and that he had admitted to an alcohol addiction. In the report, the hearing examiner noted that Castillo received outstanding work evaluations, and had completed his GED program, 460 hours of vocational training, carpentry I and II, and aerobic classes. Castillo had also completed college courses on wellness, business, marketing, typing and parenting.  Lastly, he had completed two separate forty-hour drug education programs and ten hours of AA (Alcoholics Anonymous). *See id.*

In the evaluation, the hearing examiner wrote of Castillo:

> This examiner views the subject as a more serious risk in that the subject admitted to an addiction of alcohol. He was under the influence of alcohol at the time he committed the instant offense.  The subject, while incarcerated also received an incident report for alcohol (possessing) and has not taken the corrective steps in

---

[1]Castillo, a native of El Salvador, admits he is in the United States illegally.  The Immigration and Customs Enforcement Agency has placed a detainer against him.  Resp. Ex. D p. 2.

order to remove himself from the addiction.  This examiner would note the subject has taken Drug and Alcohol classes however these programs have not corrected the problem.

The subject was questioned about the assault on a police officer with a dangerous weapon (F6586-91) when there was a disposition of no papered on 6/10/91.  The subject stated that his incident occurred under the influence of alcohol and was told by the police to leave an area. The subject did not admit to assaulting an officer and stated that he did what was asked of him, however, he was taken into custody.

*See id.*

The hearing examiner established Castillo's total guideline range[2] as 138 to 146 months to be served before  release on parole.  This represented an upward departure from guidelines.  No award was made  for Superior Program Achievement.[3]  Resp. Ex. B p. 2.  In the statement of reasons for the departure, the hearing examiner wrote:

After consideration of all factors and information presented, a departure above the guidelines at this consideration is warranted for the following reasons.  You are a more serious risk than indicated by your Basic Point Score in that you have demonstrated you [sic] inability to take corrective action regarding your alcohol addiction.  You admitted at the hearing that you were under the influence of alcohol

---

[2]Total guideline range is the time a prisoner is expected to serve if found suitable for parole under the successive rehearings system. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996); *see also infra,* Part II B.

[3] 28 C.F.R. § 2.80(e)(1) provides:

 The Commission shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense. Superior program achievement means program achievement that is beyond the level that the prisoner might ordinarily be expected to accomplish. Credit for program achievement may be granted regardless of whether the guidelines for disciplinary infractions have been applied for misconduct during the same period. The guidelines in this section presume that the prisoner will have ordinary program achievement.

at the time of the instant offense and have demonstrated that addiction has not been properly treated while incarcerated. Your inability to refrain from alcohol use makes you a more serious risk due to the behavior in the instant offense of murder.

Resp. Ex. B p.3.

On January 29, 2003, the Commission denied Castillo parole and continued him to a reconsideration hearing in January of 2006, after serving an additional thirty-six months. Resp. Ex. C. The Commission determined Castillo had been in custody for 112 months as of December 25, 2002. Resp. Ex. C. The Commission concluded that the 138-146 total guideline range was warranted because Castillo posed a more serious risk than indicated by his base point score based on his inability to abstain from alcohol. The Commission noted that Castillo had admitted at his hearing that he was under the influence of alcohol at the time he committed the murder. The Commission noted that Castillo has since demonstrated that his addiction has not been properly treated. *See id.*.

On December 6, 2005, a Commission hearing examiner conducted a reconsideration hearing. Resp. Ex. D. After reviewing Castillo's program achievements since the last hearing, she indicated that his participation in the Bureau of Prison's 500-hour Residential Drug Education Program justified a reduction in the guidelines for Superior Program Achievement. Resp. Ex. D at 2-3. The hearing officer recommended paroling Castillo on February 23, 2008, a decision that exceeded parole guidelines. *See id.*

The Executive Hearing Examiner [4] disagreed with the recommendation to set a release date, and instead recommended continuing Castillo to a reconsideration hearing in thirty-six months. He

---

[4] The Executive Hearing Examiner reviews cases after the hearing before they are presented to the Commissioners. *See* 28 C.F. R. § 2.23.

noted that at the recommended release date, Castillo will have served approximately fourteen years, an insufficient sanction for the offense. He stated that the presentence report indicated that witnesses said the shooting was unprovoked, and that Castillo calmly shot his victim at close range. Resp. Ex. D.

The Commission adopted the Executive Hearing Examiner's recommendation. On December 27, 2005, it denied Castillo parole and continued him to a reconsideration hearing in December of 2008. Resp. Ex. E. The decision exceeded the parole guidelines of 138-146 months, and was based on the nature of the offense and the determination that Castillo posed a serious risk to the community if released on parole. In its decision, the Commission wrote:

> After consideration of a factors and information presented, a decision above the Current Total Guideline range is warranted because the offense was aggravated in that witness statements indicates you started an argument with the victim. You turned as if to walk away from the victim, and without provocation, turned back around with a weapon, which you had pulled from your waistband. You then racked the weapon, pointed the gun at the victim, and began firing at almost pointblank [sic] range. The victim was unarmed and hit 6 times. Although you stated that you were under the influence of alcohol, the witnesses stated that you calmly shot the victim in the chest from 5 yo 10 feet and walked away from the scene after the shooting with the gun in your hand..... Your callous disregard for human life makes you a more serious threat to the community if released to parole.

*See id.*

Castillo subsequently appealed the Commission's decision. On February 7, 2006, the Commission notified Castillo that its December 27, 2005, decision was not appealable, but would review his concerns as a request to reopen the case. Resp. Ex. G. The Commission found the request without merit. The Commission, however, corrected an error on the Notice of Action. The date on portion that read Castillo had been confined for a total of 149 months as of "December 6,

2006" was corrected to read "December 6, 2005."  Resp. Ex. E, F, and G.

Castillo filed the instant 28 U.S.C. § 2241 petition for habeas corpus relief on August 2, 2006. On October 30, 2006, the Commission found the appropriate procedure for Superior Program Achievement was not followed and a reduction in the guideline range was warranted. Resp. Ex. I. The Commission accordingly modified its December 27, 2005, decision to include a three-month award for Superior Program Achievement, and granted Castillo a three-month reduction from the total guideline range. Resp. Ex. H.  The Commission corrected the total guideline range to 135-143 months, but did not change its decision to deny parole and conduct a reconsideration hearing in three years.  The Commission reiterated to its previous concerns about the aggravated nature of Castillo's offense conduct and the serious risk his release posed to the community. *See id.*

## B.  Guidelines for District of Columbia Code Offenders

Since Castillo is a District of Columbia Code offender, the law of that jurisdiction applies here.  *See Muhammad v. Mendez*, 200 F. Supp. 2d 466, 470 (M.D.  Pa. 2002) (laws of the District of Columbia apply to D.C. Code prisoners who fall within the jurisdiction of the Commission). The Commission has jurisdiction over District of Columbia felony prisoners pursuant  to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No 105-33 § 24-131(a).  The Act requires the Commission to follow existing District of Columbia parole law and regulations, and authorizes it to amend or supplement the regulations.  *See* D.C. Code § 24-131(a)(1).          Pursuant to this authority, the Commission has promulgated guidelines, codified at 28 C.F.R. § 2.80, which assign a "salient factor score. " These factors are used to predict recidivism, and serve as "one of the factors used in calculating parole eligibility."  *Ellis v. District of Columbia*, 84 F.3d 1413. 1415-17 (D.C. Cir. 1996) (describing the D.C. Parole Board Guidelines).

6

The points are then added or subtracted for pre-incarceration and post-incarceration factors, including whether the offense conduct included violence against a person. *See* 28 C.F.R. § 2.80 (f). They are used to establish a base point score range. *See id.* The Commission then adds the minimum number of months required to be served. The Commission also establishes a guideline range for disciplinary infractions and adds this to the guideline range. Lastly, the Commission deducts awards for Superior Program Achievement from the guideline range. The result is the total guideline range. *See* 28 C.F.R. §2.80.

## III.  Analysis

## A. Scope of Review

The gravamen of Castillo's claims is that he has met all the requirements for release on parole and that the Commission should have granted him parole. As discussed above, Congress has committed discretionary authority to the Commission to determine parole decisions.  As such, the instant analysis must first define the proper scope of judicial review.

The United States Court of Appeals for the Fourth Circuit  has held that "[w]here the controlling statute indicates that a particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." *Garcia v. Neagle*, 660 f. 2d 983, 989 (4th Cir.1981). Under District of Columbia law, there is no judicial review of parole decisions on the merits of the Commission's decision. *See Stevens v. Quick*, 678 A. 2d 28, 231 (D.C. 1996) (ruling there is no review of the merits of the Commission's decision, only whether the prisoner has been deprived of any legal rights to which he is entitled); *Smith v. Quick*, 680 A. 2d 396, 398 (D.C. 1996) (limiting review to procedures used

to deny parole).[5]   With this standard in mind, the Court will now address Castillo's claims.

## B.  Due Process Claims

Castillo's first claim is that his right to due process was violated because he did not receive

notice as to when he might be paroled or what he must do to improve his chances for a favorable

parole determination.  Since the Constitution does not create a liberty interest in parole, such an

interest to prove a due process violation must be found in District of Columbia law.  *See Greenholtz*

*v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a

convicted person to be conditionally released before the expiration of a valid sentence."). There is,

however, no constitutionally protected liberty interest in parole under D.C. law.  *See Simmons v.*

*Shearin*, 295 F. Supp. 2d 599, 602 (D. Md.  2003) (holding that D.C. parole statue and regulations

do not create a liberty interest in parole); *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995) (holding

that the D.C. Code does not create an expectation of release).

Contrary to Castillo's assertions, the parole regulations at issue do not create a liberty interest

entitled to due process protection.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 n. 2 (1983) ("an

expectation of receiving process is not, without more, a liberty interest protected by the Due Process

Clause."); *Hill v. Jackson*, 64 F. 3d 163, 171 (4th Cir. 1995) (providing that prisoners have no due

process right to procedures governing parole determination); *Brandon v. D.C. Board of Parole*, 823

F. 2d 644, 647-48 (D.C. Cir. 1987) (establishment of certain procedures does not mean that the

procedures thereby become substantive liberty entitled to federal constitutional protection under the

Due Process Clause).  District of Columbia law conveys discretionary authority to the Commission

---

[5]Similarly, substantive decisions of the Commission to grant or deny parole are not
subject to judicial review. *See Garcia v. Neagle*, 660 F. 2d 983, 988-89( 4th Cir. 1981) (limiting
review to whether the agency complied with the applicable statute or rule, but the decision to
grant or deny parole is an unreviewable decision committed to the discretion of the commission).

to grant parole.  *See* D.C. Code §24-404;[6] *see Simmons v. Shearin*, 295 F. Supp. 2d  at 603.  The

Commission has developed the regulations at issue here pursuant to that statutory authority.  *See* 28

C.F.R. §2.7(a);[7] *see also Simmons v. Shearin*, 295 F. Supp. 2d at 603.  If it is Castillo's intent to

argue that the parole criteria are so vague that the Due Process Clause is implicated, his position is

unavailing.  The statute applies only to convicted prisoners and evaluates their past offense conduct

in light of a potential decision in which they may not claim a liberty interest protected by due

process.

To the extent Castillo claims the Commission violated his right to due process by failing to

help him "understand the exact reasoning of the Parole Examiner or Commission" and to explain

what he must do to improve his odds for parole, due process requires that the prisoner be advised

---

[6]The D.C. parole statute provides:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole...

*See* D.C. Code § 24-404(a).

[7]Commission regulations provide:

In accordance with D.C. Code 24-404(a), the Commission shall be authorized to release a prisoner on parole in its discretion after the prisoner has served the minimum term of the sentence imposed, if the following criteria are met:
> (1) The prisoner has substantially observed the rules of the institution;
> (2) There is a reasonable probability that the prisoner will live and remain at liberty without violating the law; and
> (3) In the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society.

*See* 28 C.F.R. §2.73.

of the reasons why he did not qualify for parole. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. at 2 (holding that all due process requires is an opportunity to be heard an explanation as to why parole was denied). Commission regulations require advising a prisoner in writing of the reasons for its decision,. *See* 28 C.F. R. §2.74. The Commission complied with this requirement in the Notice of Action issued on December 27, 2005. Resp. Ex. E.

Next, Castillo claims that the Commission failed to follow its own regulations in determining his parole guideline range. Specifically, Castillo argues that the Commission failed to comply with 28 C.F.R. § 2.80(n), which addresses determinations outside the guidelines. As noted herein, there is no judicial review of parole decisions on the merits of the Commission's decision under District of Columbia law. *See Stevens v. Quick*, 678 A. 2d at 31; *Smith v. Quick*, 680 A. 2d at 398; *see also Garcia v. Neagle*, 660 F. 2d at 988-89 (4th Cir. 1981) (limiting review to whether the agency complied with the applicable statute or rule, and holding the decision to grant or deny parole is an unreviewable decision committed to the discretion of the commission). By statute, the Commission is authorized to determine whether the prisoner is "likely to be a responsible citizen" if returned to the community and "whether release on parole is consistent with public safety." *See* D.C. Code §24-404(a). According to regulations promulgated pursuant to that statute:

> The Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines and are relevant to the grant or denial of parole. In such cases, the Commission shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range. If the prisoner is deemed to be a poorer or more serious risk than the guidelines indicate, the Commission shall determine what Base Score would more appropriately fit the prisoner's case, and shall render its initial and rehearing decisions as if the prisoner had that higher Base Point Score. It is to be noted that, in some cases, an extreme level of risk presented by the prisoner may make it inappropriate for the Commission to

10

contemplate parole at any hearing without significant change in the prisoner's circumstances.

*See* 28 C.F.R. §2.8-(n)(1).

Reviewing courts have routinely upheld denials of parole where, among other considerations, the Commission considered a prospective parolee's violent conduct. *See Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C.Cir.1996) (upholding parole denial based upon the prospective parolee's "unusual cruelty to victims" plus a psychological report); *Muhammad v. Mendez,* 200 F. Supp.2d at 473 (upholding denial of parole where there was a serious risk of danger to the community on release as the prospective parolee had engaged in multiple acts of violence); *Mason v. U.S. Parole Comm'n,* 768 A.2d 591, 593 (D.C.2001) (upholding a five-year set-off above the guideline range because prisoner's offense showed a degree of "wantonness beyond that required to complete the [charged] kidnaping and a willingness to engage in even more violent acts"); *see also Duckett v. U.S. Parole Comm'n,* 795 F. Supp. 133 (M.D.Pa.1992) (holding that a denial of parole because the prisoner's violent record showed him to be a "serious risk to the public" was authorized by the precursor statute to D.C.Code § 24-404 and did not reflect the application of an impermissible federal standard).

In this case, the Commission advised Castillo of the reasons for its decision to exceed the parole guidelines: specifically, that he posed a more serious risk to the community if released on parole based on the nature of the offense conduct. Resp. Ex. E.  The Commission took note of  the manner in which Castillo perpetrated the offense: witness statements indicated that Castillo had started the argument and turned to walk away and then without provocation turned back around with a weapon; the victim was unarmed; and Castillo shot the victim six times  at close range.[8]  *See id.*

---

[8]The Commission also informed Castillo that the presentence report indicated that Castillo was known in the neighborhood as "trying to earn a reputation as a 'hit man.'" Resp. Ex. E.  Castillo disputes the accuracy of this information. The Commission stated that this

The Commission emphasized that Castillo's "callous disregard for human life" made him a "more serious threat to the community if released on parole."

The Commission's decision to go above the guidelines, deny parole and hold a reconsideration hearing is rational, reasonable, and well-supported given the nature and circumstances of the crime. The Commission's decision comports with its applicable statutory and regulatory authority. There is no basis to conclude that the Commission acted outside the scope of discretion granted to it by statute.

## C.  Program Achievement Claims

Insofar as Castillo seeks to raise a due process claim based on 28 C.F.R. §2.80(k), no liberty interest was implicated in assessing whether Superior Program Achievement is warranted. Thus, Castillo's claim that he is "due a formalistic process" that meets "constitutional muster" is without legal basis. Petition at 8.

Castillo also contends that he was entitled to an award for program achievement at his initial parole hearing.  After determining that Castillo's completion of a 500-hour Residential Drug Education Program warranted a reduction in the guidelines for Superior Program Achievement under 28 C.F.R. §2.80(k),[9] the Commission later corrected its earlier computations. The Commission

---

information was not considered in calculating the guidelines. *See id.*  The Commission may, however, consider disputed information in the presentence report, and will resolve questions raised regarding accuracy by a preponderance of the evidence. *See* 28 C.F.R. § 2.19(c); *Walker v. United States,* 816 F. 2d 1313, 1317 (9th Cir. 1987) (holding the court is without jurisdiction to review the Commission's discretionary determination of the reliability of sources of information in the presentence report).  Although not published, the Fourth Circuit's opinion in *United States v. James*, 1989 WL 42494 *2 (unpublished), similarly ruled that the Commission resolves disputes based upon a preponderance of the evidence.

[9]The guidelines for superior program achievement at 28 C.F.R. §2.80(k) provide in part:

then relied on Castillo's statement to the hearing examiner that he had completed the program in nine months, and applied a reduction of three months or one-third of the time during which Castillo demonstrated Superior Program Achievement. Resp. Ex. H.  Castillo has already received the program achievement recognition he seeks.  Thus, this latter claim is moot.[10]

## IV. Conclusion

Mindful that Castillo is a pro se litigant, the Court has endeavored to accord his pleadings liberal construction.  *See Haines v. Kerner* 404 U.S. 519, 520 (1972).  Castillo's concerns, however, are essentially  no more than challenges to  the Commission's exercise of discretionary judgment.  For the above-stated reasons, the Court will deny the habeas corpus petition.  A separate order follows.

Date: January 24, 2007

_____/s/_____
Alexander Williams, Jr.
United States District Judge

---

 If superior program achievement is found, the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement.

[10]Determinations concerning Superior Program Achievement are within the Commission's discretion. *See* 28 C.F.R. §2.80(e)(1) (authoring Commission to "assess whether the prisoner has demonstrated ordinary or superior achievement); *Garcia v. Neagle*, 660 F. 2d at 987 (no judicial review where action is committed to agency); *Stevens v. Quick*, 678 A. 2d at 31 (no review on of Commission decision on merits); *Walker v. United States*, 816 F.2d at 1317 (ruling weight accorded to a favorable factor such as institutional behavior is within the Commission's discretion and not subject to judicial review).